CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 20, 2025

LAURA A. AUSTIN, CLERK
BY:
    s/A. Beeson
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **DANIEL THOMAS LIPSCOMB,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:24cv00250** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **KATLYNN SLONAKER, et al.,** | ) | **By:  Robert S. Ballou** |
| **Defendants.** | ) | **United States District Judge** |

Daniel Thomas Lipscomb, a Virginia inmate proceeding *pro se*, has filed a civil rights complaint against the defendants under 42 U.S.C. § 1983.  He raises three sets of claims: (1) that the defendants violated his right to equal protection and due process of law under the Fourteenth Amendment to the United States Constitution and that they engaged in a conspiracy to violate his equal protection rights; (2) that the defendants violated 42 U.S.C. § 5101 and 45 CFR Part 1340 and intentionally inflicted emotional distress by publicly disclosing his identity as the person who reported suspected child abuse by another; and (3) deliberate indifference in failing to investigate the improper disclosure of his identity and failure to properly train Department of Social Services (DSS) directors and employees.

Service of process was not perfected on Dr. Danny Av'ula, Commissioner of the Virginia Department of Social Services.  Accordingly, he will be dismissed from this suit without prejudice.  The remaining defendants fall into three groups:  Katlynn Slonaker, a Child Protective Services worker in Winchester, and Amber Dopkowski, the Director of Winchester City Department of Social Services, along with Heather Hovermale and Derek Aston of the Winchester Commonwealth Attorney's Office, are referred to as the Winchester Defendants; Tamara Green, Director, and Family Services worker Carolin Helsley of Frederick County Department of Social Services are referred to as the Frederick County Defendants; Peter

McDermott and Kale Vorndran of the Public Defender's Office are  referred to as the Public

Defender Defendants.  Each group has filed a Motion to Dismiss.  Upon consideration of the

facts and the law, I must grant each Motion to Dismiss for the reasons stated below.

**Background**

The facts alleged by Lipscomb are accepted as true for purposes of each Motion to

Dismiss.  *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir.

2011).  His Amended Complaint alleges that he sent a letter on January 29, 2024, to defendant

Slonaker at Child Protective Services to report two different claims of potential child sex abuse.

Of the two complaints, one child lived in Winchester and the other lived in Frederick County.

Winchester Social Services retained the Winchester case and referred the other case to Frederick

County Social Services, where it was assigned to defendant Helsley.   According to Lipscomb,

the complaint investigated in Frederick County involved a 16-year-old girl who had been having

sexual relations for two years with a 22-year-old male named Farrell.  Lipscomb received calls

from both agencies and cooperated in providing the information he had.

On February 29, 2024, Lipscomb received a phone call from defendant McDermott, a

public defender representing him on two counts of probation revocation and three counts of

failing to register.  McDermott advised that he had to withdraw from the case because another

attorney in the office, defendant Vorndran, represented Farrell.  Lipscomb's complaint to Social

Services had been provided to Vorndran in discovery on Farrell's unrelated drug possession case

and had been filed in the court's file in Farrell's criminal case.  McDermott also had received a

copy of the complaint from the Commonwealth's Attorney.  Nothing had been redacted, not even

Lipscomb's name.  McDermott advised that he and Vorndran would be withdrawing from their

respective cases because there was now a conflict of interest.

Lipscomb alleges that Vorndran called Farrell on March 4, 2024, to advise Farrell that he had to withdraw from Farrell's case because of the complaint filed by Lipscomb. As a result, Lipscomb claims that Farrell has put the word out in the jail where Lipscomb is currently being held that Lipscomb is a snitch, and members of the gang with which Farrell is associated have threatened him with violence, thrown human excrement on him, spit on him, and otherwise harmed him for reporting Farrell to Social Services. Lipscomb further notes that he never gave permission to the Social Services agencies to disclose his complaint to others.

After learning of the unauthorized disclosure of his name to Farrell, Lipscomb wrote to the Winchester Social Services Department and the Frederick County Social Services Department to request an investigation into the disclosure of his identity. Defendant Helsley called Lipscomb, stating that she was very sorry this had taken place and that the Commonwealth Attorney's Office was at fault. Lipscomb requested a meeting with everyone involved. In various conversations with the Frederick County Defendants, Lipscomb was advised that they turned their notes and report over to Winchester Social Services, the agency that had referred the case to Frederick County, and that the information was subsequently given to the Commonwealth Attorneys. At a meeting in April 2024 with defendant Dopkowski, Director of Winchester Social Services, Dopkowski advised that they had turned the information over to the Winchester Commonwealth Attorney.

Thereafter, Lipscomb wrote to the Commissioner of the Virginia Department of Social Services, providing the factual background, but apparently never received a response. Lipscomb concluded that Av'ula ignored the problem and failed to investigate, showing deliberate indifference to the harm caused by the agencies' violation of policy and Virginia law. He further alleges that Av'ula failed to properly train the agency directors on handling of confidential

3

information, and the directors, in turn, failed to properly train the workers under their

supervision.  Of course, as Av'ula will be dismissed from this suit without prejudice, the court

will not address the allegations against him and will address the failure to train claims only

against the directors.

**Discussion**

A. **The Public Defender Defendants**

Section 1983 permits a federal cause of action only against a person acting under color of

state law who violates the rights of another secured by the United States Constitution or federal

law.  Defense counsel, even when court-appointed by the state or employed by the state as a

public defender, do not act under color of state law.  *Polk County v. Dodson*, 454 U.S. 312, 325

(1981); *Copley v. Ellis*, 114 F.3d 1175, 1997 WL 311512, at *1 (4th Cir. 1997) (unpublished).

An exception to this rule exists if a public defender conspires with state officials to

violate the constitutional rights of his client.  *Tower v. Glover*, 467 U.S. 914, 920 (1984).

Lipscomb has alleged that all defendants conspired to violate his rights, citing 42 U.S.C.

§ 1985(3).  However, that allegation is conclusory, and conclusory statements are not facts.

Although the court accepts all facts alleged by Lipscomb as true, the court need not accept

conclusory statements.  *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  An essential

element in any claim of conspiracy to deprive a plaintiff of his constitutional rights is an

agreement to do so among the alleged co-conspirators; "[w]ithout such a meeting of the minds,

the independent acts of two or more wrongdoers do not amount to a conspiracy."  *Brown v.*

*Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996).

The facts alleged do not show or infer any type of agreement between the defense

attorneys, the prosecutors, and/or the social workers to deprive plaintiff of his rights.  McDermott

did nothing more than tell Lipscomb what had been provided to him in discovery—and what had

been provided to Vorndran in discovery.  McDermott did not disclose the information to anyone

but Lipscomb himself, which was necessary to explain why he needed to withdraw from the

case.  Likewise, accepting as true the allegation that Vorndran communicated the information to

his client, Farrell, whether rightly or wrongfully, the inference from the facts alleged is that

counsel was explaining his ethical obligation to withdraw, not intentionally endeavoring to

violate Lipscomb's rights because of some agreement with the other defendants.

Because the facts do not show a meeting of the minds and a unity of purpose to deprive

Lipscomb of his constitutional rights, the conspiracy claim must fail.  The remaining claims

against the Public Defender Defendants fail because they were not acting under color of state law

and are therefore not subject to suit under § 1983.  Their Motion to Dismiss (ECF No. 43) will be

granted.

### B. The Winchester and Frederick County Defendants

1. The Commonwealth Attorneys

Prosecuting attorneys are afforded absolute immunity for their conduct "intimately

associated" with the judicial phase of the criminal process. *Buckley v. Fitzsimmons*, 509 U.S.

259, 270 (1983).  A decision about what evidence to disclose in discovery is such a prosecutorial

function. *Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994).  While performing such a

prosecutorial function, a prosecutor has immunity even for deliberate misconduct that violates

constitutional rights. *Annappareddy v. Pascale*, 996 F.3d 120, 141 (4th Cir. 2021).  Absolute

prosecutorial immunity may lead to unfair results in some cases, "leav[ing] the genuinely

wronged [party] without civil redress against a prosecutor whose malicious or dishonest action

deprives him of liberty." *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  The Supreme Court

has concluded that important policy justifications outweigh the potential harms.  *Id.*

Because the information about Lipscomb's complaint to Social Services was disclosed to

the court and defense counsel in the course of pretrial discovery, defendants Hovermale and

Aston are immune from this suit, and they must be dismissed.

2.   Social Services Defendants

The claims made against Slonaker and Dopkowski from Winchester Social Services and

against Green and Helsley from Frederick County Social Services must be addressed on the

merits.  The first claim against all defendants alleged equal protection and due process violations,

along with conspiracy to violate Lipscomb's equal protection rights.

a.   *Claim One*

To state an actionable claim for violation of the Equal Protection Clause of the Fourteenth

Amendment, a plaintiff must show that he has been treated differently from others with whom he

is similarly situated, and that the unequal treatment was the result of intentional or purposeful

discrimination.  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Unless the disparate

treatment involves a fundamental right or a suspect class, however, a defendant's actions are

subject only to rational basis review, the lowest standard of review, under which few if any

behaviors are considered "unconstitutional."  *Id.* at 731.  Lipscomb has not alleged that he is a

member of a suspect class (race, gender, religion, etc.), nor has he alleged the violation of a

fundamental right.  He alleges violation of state law regarding confidentiality of records, but in

the absence of a federal constitutional violation, a state law violation is not sufficient to support a

§ 1983 claim.  *Snider Intern. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 145 (4th Cir.

2014).

6

Not only has Lipscomb failed to raise his equal protection claim to a constitutional level, but he also has not identified "similarly situated others" who have been treated differently. Finally, he alleges that the prosecutors "hate" him and would "do anything to jam [him] or cause harm to [him]," (Am. Compl. at 7, ECF No. 11), but alleges no facts from which one could infer that the social workers intended to discriminate against him. His equal protection claim against the social workers must fail.

Lipscomb fares no better under a due process analysis. Although a constitutional "right to privacy" has been recognized, sometimes under substantive due process, the courts have limited that right to personal decisions concerning matters like "marriage, contraception, family relationships, and child rearing and education." *DM v. Louisa County Dep't of Human Servs*, 194 F. Supp. 3d 504, 508 (W.D. Va. 2016). The court in *DM* specifically held that unauthorized disclosure of child abuse reporting records to the alleged abuser did not support a constitutional due process claim under § 1983, noting that:

> [T]he question is not whether individuals regard this information . . . as private, for they surely do, but whether the Constitution protects such information.

*Id.* Because the constitution does not protect the information, the due process claim also fails.

Finally, consistent with the discussion of the Public Defender Defendants, Lipscomb has failed to allege facts supporting the existence of a conspiracy, because there is no evidence of an agreement, or "meeting of the minds," on a mutually intended purpose to violate Lipscomb's rights.

### b. *Claim Two*

Lipscomb claims that disclosure of his identity violated not only Virginia law, but also violated 42 U.S.C. § 5101 and 45 CFR Part 1340. However, as argued by the Frederick County

Defendants, § 5101 merely establishes the Office on Child Abuse and Neglect to execute and

coordinate the Child Abuse Prevention and Treatment Act (CAPTA). The statute says nothing

about confidentiality of records or protecting the identity of one who reports abuse. Part 1340 of

CFR Title 45 was removed in its entirety in 2015, including 45 CFR § 1340.20-Confidentiality.

80 FR 16577-03 (March 30, 2015). Factually, there is no violation of federal statute or

regulation, but even if 45 CFR § 1340-20 were still in effect—and applicable to the Social

Services Agencies in Virginia, neither statute nor regulation can create a private right of action

unless such a right and remedy have been created by Congress. *Alexander v. Sandoval*, 532 U.S.

275, 286 (2001). The only Federal appellate court addressing the issue agreed that district courts

considering the issue properly found that Congress did not intend to create a private cause of

action for individuals by enacting CAPTA, and neither could regulations adopted pursuant to the

Act create a private right of action. *Henry A. v. Willden*, 678 F.3d 991, 1010 (9th Cir. 2012) (and

cases cited therein). This portion of claim two must be dismissed.

Lipscomb also refers to Virginia Code § 63.2-1729, which provides that the identity of a

person making a complaint to the Department of Social Services "shall be confidential and shall

not be open to inspection by members of the public," although the directive is subject to several

exceptions. Va. Code § 63.2-1729. Unauthorized disclosure of confidential social service

records is punishable as a Class 1 misdemeanor. Va. Code § 63.2-104(A). A violation of a state

law is not sufficient, however, to support an action under § 1983. *Snider Intern. Corp.,* 739 F.3d

at 145. Even in state court, a private right of action for damages is not recognized based solely

on a statutory violation, especially when the General Assembly has provided a different method

for enforcing the law (as in imposition of criminal penalties). *Cherrie v. Va. Health Servs,* 787

S.E.2d 855, 858 (Va. 2016).

In claim two, Lipscomb also references the state law tort of intentional infliction of emotional distress.  In Virginia, such a claim is actionable only if a defendant's behavior was "outrageous and intolerable."  *Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005). Whether conduct is so extreme and outrageous as to permit recovery is a question of law for the court, which must determine if the conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal citations omitted).

In his Amended Complaint, Lipscomb alleged only that the Winchester Social Services Defendants turned the information over to the Winchester's Commonwealth's Attorney.[1]  As a matter of law, the court cannot find that the social workers' actions were "outrageous and intolerable."  In fact, Virginia law states that local social service departments "shall notify the local attorney for the Commonwealth and the local law-enforcement agency of all complaints of suspected child abuse or neglect involving . . . (iii) any sexual abuse, suspected sexual abuse or other sexual offense involving a child . . . or (vi) contributing to the delinquency of a minor . . ." Va. Code § 63.2-1503.  Doing what the law requires cannot be "outrageous and intolerable."  The social services defendants cannot be held responsible for what the Commonwealth Attorney subsequently did with the information provided.  Further, notwithstanding confidentiality requirements in the state, a person accused of child abuse or neglect has a right to access information related to himself that is contained in the agency's record.  Va. Admin Code § 40-

---

[1] In his Brief in Opposition to the Motions to Dismiss, Lipscomb alleges that the Frederick County Defendants admitted in a Zoom meeting that they turned the information over to the Winchester Commonwealth's Attorney. This differs from his Amended Complaint, in which the Frederick County Defendants said they turned their information over to the Winchester Social Services defendants who had referred the case to them.  A plaintiff may not amend his complaint through briefing. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

705-160.A.3.  For these reasons, the claim for intentional infliction of emotional distress must also be dismissed.

        *c.   Claim Three*

In the last claim, Lipscomb alleges that the social services defendants violated his Eighth and Fourteenth Amendment rights by failing to investigate the release of his records, and that defendants Green and Dopkowski, as local agency Directors, failed to properly train their employees.  The claim fails on both grounds.

First, the Eighth Amendment is inapplicable to this situation.  The Eighth Amendment prohibits cruel and unusual punishment for a crime.  Even though Lipscomb is currently in custody, the events which are the subject of this lawsuit are not related to his custody status and have nothing to do with punishment of Lipscomb.

As to failure to investigate, there is no constitutional right to a criminal investigation or prosecution of another, even if one alleges that he has been the victim of a crime.  *Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009) (unpublished).  By analogy, one has no constitutional right to demand an internal investigation at an agency.

Finally, to bring a § 1983 claim based on failure to train, a plaintiff must first allege facts sufficient to show that a subordinate's conduct violated his constitutional rights.  *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 537 (E.D. Va. 2015). Lipscomb simply has not alleged facts which show that any *constitutional* right was violated.  Second, a failure to train claim must allege facts revealing the nature of the training received and what should have been received; in other words, the plaintiff must point to a specific deficiency in the training rather than to the "general laxness or ineffectiveness" of whatever training was given.  *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. (1987).  Lipscomb has failed to do so.

## Conclusion

For the reasons stated, the Motion to Dismiss filed by the Public Defender Defendants

(ECF No. 43), the Motion to Dismiss filed by the Winchester Defendants (ECF No. 47), and the

Motion to Dismiss filed by the Frederick County Defendants (ECF No. 53) will be granted.

An appropriate order will be entered this date.

ENTERED:  March 20, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge

11